UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN R. SCHRUBB,<br><br>    Plaintiff,<br><br>v.<br><br>R. SIMMONS, et al.,<br><br>    Defendants. | Case No. 12-cv-00418-JSW<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Docket. No. 121 |

**INTRODUCTION**

In this pro se prisoner's civil rights action, Kevin Schrubb complains that he was attacked by his cellmate at Pelican Bay State Prison ("PBSP"). Before the Court is Defendants' motion for summary judgment. For the reasons discussed below, the motion for summary judgment will be granted and judgment entered in Defendants' favor.

**BACKGROUND**

**A.  Factual Background**

The following facts are undisputed unless otherwise noted.

In 2007, an inmate named Davis was ordered to share a cell with Plaintiff at PBSP. *See* ECF No. 93 ("Second Amended Complaint" or "SAC") at 68-69. Plaintiff represents that Davis informed Defendant Officer Simmons that he refused to be housed with Plaintiff, and on June 18, 2007, was issued an RVR for refusing the housing assignment. *See* SAC at 69; *see also* ECF No. 132 ("Opposition") at 7. Defendants represent that Davis made no such refusal, *see generally*, ECF No. 121 ("summary judgment motion" or "MSJ"), and that in any event Defendant Officer Simmons did not have the authority to modify housing assignments, *see id.* at 4. Indeed, in his deposition Plaintiff stated that, "to [his] knowledge," Davis did not "tell any officer . . . that

[Davis] didn't want to house with [Plaintiff]." ECF No. 121-1 ("Padua Declaration"), Ex. A at 24:23-25.

In June or July of 2007, Davis was moved into Plaintiff's cell. *See id*. at 24:8-9 (stating that Plaintiff and Davis were housed together for "four or five months" before Davis attacked Plaintiff). For "four or five months," Plaintiff and Davis had no "negative interactions," and "got along pretty well, for the most part." *Id*. at 24:11-15.

Plaintiff and Davis had Unit Classification Committee ("UCC") meetings on November 8, 2007, and November 1, 2007, respectively. In his November 8, 2007, UCC meeting, Plaintiff informed the UCC that he "agree[d] with his current double-cell assignment . . . with Inmate Davis," and that the assignment was "okay." ECF No. 121-2 ("Cervantes Declaration"), Ex. A. In his November 1, 2007 UCC meeting, Davis said the same. *See* ECF No. 121-3 ("Barbra Declaration"), Ex. A.

On November 19, 2007, after both inmates had agreed to be celled with one another and after they had been celled together for at least four months without incident, Davis stabbed Plaintiff with a homemade weapon and attacked him with an electrical adapter, causing serious injuries to Plaintiff's face. SAC at 69.

At various times, Plaintiff has alternately represented that Davis attacked him because Plaintiff refused to join Davis's gang, *see* Cervantes Decl., Ex. B; that Davis attacked him because Davis believed Plaintiff had disparaged Davis's gang, Cervantes Decl., Ex. C; and that Plaintiff did not know why Davis attacked him, and that it occurred suddenly and without provocation, *see* Padua Decl., Ex. A at 16:21-25, 17:1-8.

**B.    Procedural Background**

Plaintiff filed the original Complaint in this action in January 2012. *See* ECF No. 1. The Court screened the Complaint, and found that Plaintiff's "alleg[ation] that Lopez and Bryant, two PBSP officials, housed him in a cell with an inmate with a history of attacks on other inmates," and that Plaintiff was subsequently attacked, state a cognizable claim that Defendants had been deliberately indifferent to Plaintiff's safety. *See* ECF No. 4 at 2-3.

2

This action was dismissed when Plaintiff failed timely to serve Defendants, then reopened following an appeal of the dismissal. *See* ECF Nos. 19, 43.

Plaintiff subsequently filed a first amended complaint ("FAC"), adding claims against Defendants Simmons and Webster, on the theory that Davis informed Simmons that Davis did not want to be celled with Plaintiff. *See* ECF No. 51. The Court granted Plaintiff's motion to amend, and ordered Defendants to respond to Plaintiff's new claims. *See* ECF No. 52.

Upon Defendants' motion, the Court subsequently revoked Plaintiff's in forma pauperis status, *see* ECF No. 65, and dismissed this action when Plaintiff failed to pay the filing fee, *see* ECF No. 70. Following an appeal of this second dismissal, the Court reinstated Plaintiff's in forma pauperis status and ordered Defendants to file a dispositive motion. *See* ECF No. 81.

Defendants subsequently moved to dismiss the FAC, arguing that Plaintiff's claim was barred by the statute of limitations, and that Plaintiff failed to provide facts showing that Defendants were aware of Davis's violent proclivities. *See* ECF No. 82. The Court denied Defendants' motion as to the statute of limitations argument, and granted Plaintiff's request to amend the FAC to provide more facts regarding Defendants' awareness of the risk Davis posed to Plaintiff. *See* ECF No. 92.

Plaintiff filed a second amended complaint ("SAC"). ECF No. 93. The Court screened the SAC, and concluded that "[w]hen liberally construed," it stated an Eighth Amendment claim against Defendants Simmons and Webster. ECF No. 96. The Court dismissed a due process claim. *See id*. The Court ordered Defendants to respond to the SAC. *See id*.

Defendants moved for summary judgment, arguing that Plaintiff had failed to exhaust his claims and that Plaintiff's requests for injunctive and declaratory relief were moot. *See* ECF No. 102. The Court granted Defendants' motion in part, concluding that Defendants were not entitled to summary judgment on the exhaustion issue, but granting summary judgment as to Plaintiff's requests for injunctive and declaratory relief. *See* ECF No. 112.

Defendants now have moved for summary judgment as to Plaintiff's remaining claims. *See* ECF No. 121 ("summary judgent motion" or "MSJ").

3

# DISCOVERY DISPUTE

Plaintiff raises two discovery issues which the Court will address before discussing Defendants' summary judgment motion.

## A. Deposition Transcript

Plaintiff asks for the transcript of his deposition to be stricken from the record because he has not reviewed it. *See* Opp. at 6-7. This request is **DENIED** because there is no showing in the record that Plaintiff requested the opportunity to review the deposition transcript.

First, Plaintiff has not shown that he affirmatively requested the opportunity to review his deposition transcript. *See* Fed. R. Civ. P. 30(e)(1) ("On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days . . . to review the transcript or recording . . . ."). Plaintiff states in his Opposition that he did not waive the right to review his deposition transcript, but he does not say that he made an affirmative request as required under the Federal Rules. *See* Opp. at 7. Moreover, the Federal Rules require the officer recording the deposition to state "whether a review was requested." Fed. R. Civ. P. 30(e)(2). No such statement appears here, *see* Padua Decl., Ex. A at 53, suggesting Plaintiff made no such request.

Second, although Plaintiff received a copy of the portions of the deposition transcript on which Defendants rely, he does not explain what "changes in form or substance" he would have made if given the opportunity, Fed. R. Civ. P. 30(e)(1)(B), and thus has failed to demonstrate why the Court should not rely on the portions of the deposition transcript provided.

## B. Request for Additional Documents

In his Opposition, Plaintiff appears to argue that he needs more discovery before he can fully respond to Defendants' summary judgment motion. *See generally*, Opp.

Plaintiff represents that Defendants did not respond to all of his discovery requests. *See id*. at 2, 4, 16. The record reveals that Plaintiff made requests such as "[a]ny and all incident packages . . . generated by prison staff in relation to, or involving, Davis, from the time of his inception into CDC/R to present," and "[a]ny and all RVRs, . . . generated by any prison staff, whether issued or not, to Davis, from the time of his inception into CDC/R to present." Opp., Ex. 1 at 6-7. After Defendants objected that these requests were overbroad and violated third parties'

4

privacy, *see id.*, Ex. 2, Plaintiff neither attempted to limit his document requests to more relevant information, nor moved to compel production of the documents as requested, *see generally*, Docket.

Although Plaintiff did not expressly move for relief under Federal Rule of Civil Procedure 56(d) ("Rule 56(d)"), the Court construes Plaintiff's Opposition arguments as a "request under Federal Rule of Civil Procedure 56(d) for further discovery prior to judgment." *Calloway v. Veal*, 571 F. App'x 626, 627–28 (9th Cir. 2014) (stating that even improperly phrased requests should be construed as Rule 56(d) motions, because of "the allowances that must be made for pro se prisoners"); *Hausauer v. City of Mesa*, 754 F. App'x 665, 666 (9th Cir. 2019) (holding that a pro se plaintiff's inartful request could be construed as a Rule 56(d) motion, and affirming the district court's denial of the Rule 56(d) motion). So construed, Plaintiff's implied 56(d) motion is **DENIED**.

Rule 56(d) is a device for litigants to avoid summary judgment when the non-movant needs to discover affirmative evidence necessary to oppose the motion. *See Garrett v. San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1987). To succeed on a Rule 56(d) motion, a party opposing summary judgment must make clear "what information is sought and how it would preclude summary judgment." *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998); *see, e.g., id.* at 853-54 (district court correctly denied motion for continuance to engage in further discovery under Rule 56(d) where plaintiff did not provide any basis or factual support for his assertions that further discovery would lead to the facts and testimony he described, and his assertions appeared based on nothing more than "wild speculation"). Rule 56(d) requires that the requesting party show (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery, (2) the facts sought exist, and (3) the sought-after facts are essential to oppose summary judgment. *See Family Home & Fin. Ctr. v. Fed. Home Loan Mtg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008); *see also Margolis*, 140 F.3d at 853–54 (district court correctly denied Rule 56(d) motion where plaintiff did not provide any basis or factual support for his assertions that further discovery would lead to the facts and testimony he described). The party seeking relief must "explain *why* those facts would preclude summary judgment." *Tatum v. City & Cty. of S.F.*, 441 F.3d 1090, 1100 (9th

5

Cir. 2006) (emphasis added).  The party must also show that it "diligently pursued its previous discovery opportunities, and . . . demonstrate that allowing additional discovery would . . . preclude[] summary judgment." *Bank of Am., NT & SA v. PENGWIN*, 175 F.3d 1109, 1118 (9th Cir. 1999).

"The failure to conduct discovery diligently is grounds for the denial of a [Rule 56(d)] motion." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002); *accord Long v. Playboy Enters. Int'l, Inc.*, 565 F. App'x 646, 648 (9th Cir. 2014) ("Failing to diligently pursue discovery in the past is sufficient reason to deny [a Rule 56(d) motion for] further discovery."). As the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") has repeatedly held, even pro se prisoners must pursue discovery in a diligent manner. *See McRae v. United States*, 812 F. App'x 505 (9th Cir. 2020) ("The district court did not abuse its discretion by denying [federal prisoner] McRae's requests for additional discovery pursuant to Fed. R. Civ. P. 56(d) and to continue summary judgment [in a case under the Federal Tort Claims Act] because McRae did not diligently pursue discovery during the time allotted by the district court.").[1]  Diligence is so important that the Ninth Circuit will overturn the district court's discretionary Rule 56(d) order only if "the movant [both] diligently pursued its previous discovery opportunities, *and* can demonstrate that allowing additional discovery would have precluded summary judgment." *PENGWIN*, 175 F.3d at 1117–18 (emphasis added).

Plaintiff fails to meet these requirements.

First, the missing information would not help Plaintiff avoid summary judgment. Although the requested discovery could go toward whether Davis told Simmons that Davis did not wish to be celled with Plaintiff, as explained below Plaintiff's claim fails even if the Court assumes that Davis made this statement.  Plaintiff's desired facts thus would not help him avoid summary judgment.  *See Family Home & Fin. Ctr.*, 525 F.3d at 827.

---

[1] *See also Ricky R. v. City of Alhambra*, 330 F. App'x 639, 640 (9th Cir. 2009) (finding that district court did not abuse its discretion, where pro se prisoner had not diligently pursued discovery); *Revelles v. Stout*, 103 F. App'x 622, 627 n.5 (9th Cir. 2004) (same); *Seaton v. Shatzer*, 230 F.3d 1367 (9th Cir. 2000) (same); *Locken v. Robbins*, 24 F.3d 247, at *4 (9th Cir. 1994) (same) (unpublished); *Mann v. Beaty*, 874 F.2d 816, at *4 (9th Cir. 1989) (same) (unpublished).

1        Second, the Court denies plaintiff's Rule 56(d) motion on the alternative and independent basis that Plaintiff did not diligently pursue discovery. Defendants clearly explained why Plaintiff's discovery requests were overbroad, and Plaintiff neither attempted to correct the scope of his requests, nor moved to compel production of the desired documents. This cannot be considered diligence.

       Because the missing information would not help Plaintiff avoid summary judgment, and because Plaintiff was not diligent, he cannot avoid summary judgment with his implied 56(d) motion.

## DISCUSSION OF SUMMARY JUDGMENT MOTION

### A.    Legal Standard

       Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

       Where, as here, the defendant moves for judgment against a plaintiff on the merits of his claim, that the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. The burden then shifts to the nonmoving party, which must "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The non-moving party "must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at

7

252). "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the non-moving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323.

A court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *See id*. at 631. However, a court's obligation to view evidence in the light most favorable to the non-movant does not require it to ignore undisputed evidence produced by the movant. *See L.F. v. Lake Wash. Sch. Dist.*, 947 F.3d 621, 625 (9th Cir. 2020). Even pro se litigants must identify or submit some competent evidence to support a claim. *See Soto v. Sweetman*, 882 F.3d 865, 873 (9th Cir. 2018) (plaintiff not entitled to equitable tolling where he failed to submit any competent evidence in his opposition).

Nor is it the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The plaintiff must identify with reasonable particularity the evidence that precludes summary judgment. *Id.; see also Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29, 1031 (9th Cir. 2001) (even if there is evidence in the court file which creates a genuine issue of material fact, a court may grant summary judgment if the opposing papers do not include or conveniently refer to that evidence).

**B.    Analysis**

Plaintiff alleges that Defendants were aware that Davis posed a risk to Plaintiff's safety, because Davis had informed Officer Simmons that Davis did not want to be celled with Plaintiff. *See generally*, SAC. Plaintiff claims that Defendants' failure to separate Plaintiff and Davis constituted deliberate indifference to Plaintiff's safety, in violation of the Eighth Amendment. Defendants counter that Plaintiff has failed to carry his summary judgment burden because he has no evidence of any such refusal. *See* MSJ at 6-7.

8

As explained below, there appears to be a dispute of fact as to whether Davis initially refused to be housed with Plaintiff. However, as discussed below, this dispute of fact is not material because, under the facts presented here, Defendants would not have been aware of any risk to Plaintiff's safety. First, Davis's statement is too vague to have alerted Defendants to a substantial risk of serious harm to Plaintiff. Second, by the time of the attack circumstances had changed such that even if Davis's statement had raised an inference that Plaintiff might be in danger, Defendants would no longer recognize that danger.

### 1. Deliberate indifference standard

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994). Deliberate indifference to an inmate's health or safety may violate the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, *i.e.*, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and (2) the official is, subjectively, deliberately indifferent to the substantial risk of serious harm. *See Farmer,* 511 U.S. at 834.

Under the deliberate indifference standard, the prison "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The prisoner "need not show that a prison official acted or failed to act believing that harm would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* (citation omitted).

### 2. There is a dispute of fact regarding Davis's statements

Plaintiff's theory is that Defendants knew Plaintiff was in danger from Davis because Davis told Defendant Officer Simmons that Davis did not want to be celled with Plaintiff, and that

9

1   Davis was charged with a rules violation ("RVR"), for refusing to obey the order to share a cell
2   with Plaintiff.  *See* Opp. at 5-6, 16.  Plaintiff claims that this RVR was later reduced to a "128
3   Counseling Chrono."  *Id*. at 6.

4       Defendants argue that Plaintiff has no evidence to support this theory.  *See generally*, MSJ.
5   Defendant Officer Simmons represents that he has no recollection of such a conversation, *see*
6   Docket No. 121-4 ("Simmons Declaration") ¶ 3, and Defendants represent that Davis's prison file
7   does not contain any record of the alleged discipline, *see id*.  *See also* ECF No. 121-5 ("Frisk
8   Declaration") ¶ 7 (saying Davis's file does not include such a disciplinary record), Barbra Decl. ¶
9   6 (same).  Moreover, Defendants argue that Plaintiff's theory is based upon a hearsay statement by
10  an unknown correctional officer, and that such hearsay cannot create a dispute of fact.  *See* MSJ at
11  7; *see also* Padua Decl., Ex. A at 23:1-24:5 (in deposition, Plaintiff concedes that his theory stems
12  from a statement by an unknown correctional officer).

13      Plaintiff argues that he has more than hearsay to support his theory.  He argues that the
14  record of Davis's November 1, 2007 UCC meeting, which refers to an RVR that had been reduced
15  to a 128 Counseling Chrono, suggests that Davis made the statements and received the discipline
16  alleged.  *See id*. at 6, 8 (quoting sealed Barbra Decl., Ex. A).  Plaintiff notes that, although
17  Defendants say Davis's file did not include an RVR regarding a refusal to share Plaintiff's cell, no
18  Defendant made a similar representation about a 128 Counseling Chrono.  *See id*. at 13.
19  Additionally, Plaintiff represents that PBSP's Litigation Coordinator conceded that Davis had
20  been given an RVR by Simmons.  *See id*.  Finally, Plaintiff notes that California law bars
21  Defendants from producing any 128 Counseling Chrono's from Davis's file, *see id*. at 4, and
22  argues that Plaintiff should not be penalized because the 128 Counseling Chrono cannot be
23  produced, *see id*. at 13.

24      At summary judgment, a court is directed to view the evidence if the light most favorable
25  to the non-moving party, and to draw inferences in that party's favor.  *See T.W. Elec. Serv.*, 809
26  F.2d at 631.  Here, the record of Davis's UCC meeting could support Plaintiff's claim that Davis
27  initially refused to be celled with Plaintiff, and was disciplined for that refusal.  That PBSP's
28  Litigation Coordinator stated Defendant Officer Simmons had issued an RVR to Davis also could

10

support Plaintiff's allegation. There thus appears to be a dispute of fact as to whether Davis initially refused to be celled with Plaintiff.

### 3. The dispute of fact is immaterial.

Although there is a dispute of fact as to whether Davis initially refused to be celled with Plaintiff, this dispute does not preclude summary judgment. Plaintiff only could avoid summary judgment by showing there is a "genuine dispute as to a[] *material* fact." Fed. R. Civ. P. 56(a) (emphasis added). Materiality is judged according to whether a fact could affect the outcome of a lawsuit. *See Liberty Lobby,* 477 U.S. at 248. Here, even if Davis initially told Defendant Officer Simmons he did not wish to be celled with Plaintiff, such a statement is too vague to make any prison official aware that Davis posed a substantial risk of serious harm to Plaintiff. Moreover, other events which occurred after that alleged conversation there was no "substantial risk of serious harm" when Davis attacked Plaintiff on November 17, 2007. *Farmer,* 511 U.S. at 842.

#### a. Davis's statement was too vague to alert Defendants of a substantial risk to Plaintiff's safety.

Davis's statement that he did not want to be housed with Plaintiff was too vague to alert Defendant Officer Simmons that Davis intended to harm Plaintiff. Even where prison officials have been notified of a threat, courts find no subjective awareness of a substantial risk of serious harm where those threats are "vague and unsubstantiated." *Davis v. Scott*, 94 F.3d 444, 446–47 (8th Cir. 1996) (affirming summary judgment where plaintiff's statements to prison officials "were . . . vague and unsubstantiated")*; see also Bittaker v. Gomez*, 35 F.3d 570 (9th Cir. 1994) (unpublished) (affirming summary judgment where plaintiff told defendants he felt unsafe, but "would not specify why he felt unsafe or identify anyone who had threatened him"); *see also Mickens v. Stafford Creek Corr. Ctr.*, 132 F. App'x 691, 692–93 (9th Cir. 2005) (affirming summary judgment although plaintiff told defendants he feared physical assault, because plaintiff did not identify the person who had threatened him).

Here, Davis's statement does not reach even the level of a vague and unsubstantiated threat. There is no allegation that Davis threatened to harm Plaintiff if forced to cell with him, only that Davis indicated a preference not to share Plaintiff's cell. At most, Davis's statement that

11

he did not wish to be celled with Plaintiff might have given rise to a "mere suspicion" that an attack might occur, which is insufficient to support a claim of deliberate indifference.[2] *Berg v. Kincheloe,* 794 F.2d 457, 459 (9th Cir.1986).

Moreover, even Davis's vague statement was effectively retracted before the attack when Davis informed prison officials that he accepted his cellmate assignment, so that the most recent information Defendants had at the time of the attack was that Davis accepted being celled with Plaintiff. Well before Davis attacked Plaintiff, both Plaintiff and Davis told prison officials that they agreed with their current housing assignment. *See* MSJ at 5 (citing Barba Decl., Ex. A; Cervantes Decl., Ex. A). Moreover, Davis informed prison officials that "he was willing to . . . abstain from violence." ECF No. 122-1 ("Rush Declaration"), Ex. A. These statements, made prior to Davis's attack on Plaintiff, would have led Defendant Officer Simmons to believe that Davis did not pose a substantial risk of serious harm to Plaintiff.

Davis's statement that he did not wish to share Plaintiff's cell simply is insufficient to suggest that Davis would pose a substantial risk of serious harm to Plaintiff.

### b. Between Davis's initial refusal to house with Plaintiff, and the attack on Plaintiff, circumstances had changed such that Defendants would not recognize a substantial risk.

Even under Plaintiff's version of events, he and Davis were able to live together peaceably for at least four months. *See* Padua Decl., Ex. A at 24:11-15 (For "four or five months," Plaintiff and Davis had no "negative interactions," and "got along pretty well, for the most part."). That the two inmates were able to live together for an extended period of time would suggest to Defendant Officer Simmons that Davis did not pose a substantial risk of serious harm to Plaintiff.

---

[2] On at least two occasions Plaintiff represented to prison officials that Davis attacked Plaintiff because immediately prior to the attack Plaintiff made disparaging statements regarding, or refused to join, a gang. *See* MSJ at 4 (paraphrasing sealed documents); *see also* Rush Decl., Exs. B, C (containing Plaintiff's statements, made on at least two separate occasions to at least three prison officials). This suggests that Davis did not attack Plaintiff out of general animosity expressed in June or July 2007, but rather because of a specific, separate provocation which Defendants could not predict. Indeed, Plaintiff appears to concede that Davis had "no problem with being housed with Plaintiff" on November 1, 2007 – at least four months after Davis's alleged unwillingness to be celled with Plaintiff - and an intervening event changed Davis's attitude on November 17, 2007. Opp. at 14 (stating that it "it *became* a problem *on* November 17") (emphases added). Plaintiff does not address these prior representations. *See generally*, Opp.

12

The Ninth Circuit's decision in *Labatad* is instructive. In *Labatad,* the Ninth Circuit affirmed summary judgment in favor of prison officials against a deliberate indifference claim from an inmate who was assaulted by a member of a rival prison gang with whom he was temporarily assigned to share a cell in a prison that did not house rival gangs separately. 714 F.3d at 1157. The plaintiff in *Labatad* was a gang member and fought with a member of another gang, after which both combatants told prison investigators that the fight was not gang related and that they had no further issues. *Id.* Plaintiff then was put in ad-seg and assigned to share a cell with another inmate from the same gang as the inmate with whom plaintiff had just fought. *Id.* There had been no difficulties with the new cellmate during the extended period both had been in general population, there had been no threats from the new cellmate, and the new cellmate was not identified as an enemy or risk to the plaintiff. *Id.* Three days after moving in, the new cellmate assaulted the plaintiff. *Id.* The attacking cellmate later said that he assaulted plaintiff because they were from different gangs and thought he (the attacking cellmate) would be attacked unless he did so first. *Id.* The Ninth Circuit concluded that the district court properly had granted summary judgment on the claim that prison officials were deliberately indifferent to a substantial risk that the new cellmate would assault plaintiff if the two were housed in the same cell. *Id.* at 1161. Among other things, the court noted the absence of prior conflict between plaintiff and the new cellmate and the assurances that the earlier fight was not gang related. *Id.* at 1161. The court concluded that summary judgment was properly granted in the defendants' favor because there was no evidence "showing that the defendants knew of facts supporting an inference and drew the inference of a substantial risk to Labatad if he was placed in a cell with Mara." *Id*.

Similarly, in *Strizich v. Batista*, the Ninth Circuit affirmed the dismissal of a suit where the prisoner-plaintiff was attacked by a member of a rival gang. -- F. App'x --, Appeal No. 18-36008, 2022 WL 823587, at *2 (9th Cir. Mar. 18, 2022). The Ninth Circuit found that the defendants would not have been aware that the prisoner-plaintiff was at risk from the attacking inmate because he had been "integrated with rival gang members for school, work, and treatment groups without incident" for three months. *Id*.; *see also* ECF No. 8, Case No. 16-00012-H-DLC-JTJ (D. Mont. Apr. 25, 2016) (detailing factual basis of claim and reasons for dismissal). District courts

13

within the Ninth Circuit have similarly found a failure to demonstrate deliberate indifference where the prisoner-plaintiff and the attacking inmate had long coexisted peaceably. *See Sandoval v. Lewis*, No. 16-CV-0460 LHK (PR), 2017 WL 487025, at *4 (N.D. Cal. Feb. 6, 2017) (where plaintiff and attacking inmate "had been housed in the same unit for 2.5 years without any incident aside from one verbal altercation," this suggested defendant official would not have perceived a substantial risk of serious harm when both were in the hallway at the same time); *Womack v. Adams*, No. 4:15-CV-5095-SMJ, 2017 WL 11557485, at *4 (E.D. Wash. Dec. 27, 2017) (where plaintiff approached defendant once "with generalized concerns about his safety," but was able to "live[] in the general population for nearly one year without incident," this was insufficient to raise an inference that the defendant was deliberate indifferent); *Fosselman v. Dimmer*, No. 1:12-CV-01302-DAD-SAB-PC, 2017 WL 1254685, at *18 (E.D. Cal. Feb. 17, 2017) (plaintiff's belief that he was incompatible with cellmate did not rise to level of substantial risk of serious harm, where plaintiff and cellmate "were not enemies, and had never been involved in a verbal or physical altercation"). *Cf. Toscano v. Lewis*, No. C-12-5893 EMC (PR), 2015 WL 4940832, at *19 (N.D. Cal. Aug. 19, 2015) (finding no deliberate indifference where, prior to the attack, "there was no evidence of prior conflict between Mr. Toscano and Northerners in general or with Mr. Ramirez in particular"); ECF No. 41 at 12-13, *Lomack v. Beam*, No. 3:19-CV-02943-EMC (PR) (N.D. Cal. Aug. 17, 2021) (concluding, where inmates lived together for nine days without incident, this contradicted plaintiff's allegations that they were enemies incapable of getting along).

In Plaintiff's case, as in *Labatad, Strizich*, and the decisions of other district courts, there was no evidence of prior conflict between Plaintiff and Davis, and Plaintiff and Davis had peaceably celled together for months without incident before Davis attacked Plaintiff. Thus, even if Davis's initial refusal had suggested he intended to harm Plaintiff – which it did not – intervening circumstances would have suggested to Defendants that Davis did not pose a substantial risk of serious harm to Plaintiff.

Quite simply, the facts of this case – a vague statement to begin with, effectively retracted after a substantial period of time during which the cellmates coexisted peaceably – would not alert a prison official that Plaintiff faced a serious risk of substantial harm.

14

Plaintiff has failed to raise a triable issue "that the defendants knew of facts supporting an inference and drew the inference of a substantial risk to [Plaintiff] if he was placed in a cell with" Davis. *Id. See Farmer*, 511 U.S. at 844 (explaining that defendants cannot be held liable if they show "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger"). *Walsh v. Brewer*, 733 F.2d 473, 477 (7th Cir. 1984) (Seventh Circuit "decline[d] to impose liability" because the defendant had no subjective awareness of the risk faced by the plaintiff.). Defendants are entitled to summary judgment because Plaintiff has not established a genuine issue for trial as to whether Defendants were deliberately indifferent to his safety. *See Celotex,* 477 U.S. at 324.

**C.    Defendants also are entitled to qualified immunity.**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The rule of qualified immunity "'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Burns v. Reed,* 500 U.S. 478, 495 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

In *Saucier v. Katz,* 533 U.S. 194 (2001), the Supreme Court set forth a two-step inquiry for determining whether qualified immunity exists. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If no constitutional right was violated if the facts were as alleged, the inquiry ends, and defendants prevail. *See id.* If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. . . 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201–02 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). Although *Saucier* required courts to address the questions in the particular sequence set out above, courts now have the discretion to decide

15

which prong to address first, in light of the particular circumstances of each case. *See Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

The Ninth Circuit clarified the qualified immunity analysis for a deliberate indifference claim in *Estate of Ford.* In *Estate of Ford,* the court stated, "it would have been clear to a reasonable prison official that if he knew about an excessive risk to inmate safety, and inferred from the facts of which he was aware that a substantial risk of serious harm exists, he would violate the law by disregarding it." 301 F.3d at 1050. The court explained that, for an Eighth Amendment violation based on a condition of confinement (such as a safety risk), the official must *subjectively* have a sufficiently culpable state of mind:

> 'A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' . . . Thus, a reasonable prison official understanding that he cannot recklessly disregard a substantial risk of serious harm, could know all of the facts yet mistakenly, but reasonably, perceive that the exposure in any given situation was not that high. In these circumstances, he would be entitled to qualified immunity.

*Id*. (citations omitted).

Before the November 17, 2007 attack, for the reasons discussed above, it would not have been clear to a reasonable prison official that Plaintiff faced a "substantial risk of serious harm" from being placed in a cell with someone who did not wish to share a cell with Plaintiff. 301 F.3d at 1051. A reasonable prison official would reasonably perceive that Plaintiff's exposure to any risk of harm was not substantial in the absence of a specific threat from Davis, the fact that the two inmates said they agreed with their cell assignments, Davis's statement that he would abstain from violence, and the fact that the two inmates had shared a cell for months without incident. Because the law and the facts here did not put Defendants on notice that their conduct would be clearly unlawful, summary judgment based on qualified immunity also is appropriate. *See Saucier,* 533 U.S. at 202.

**D.     Leave to amend will not be granted.**

In his Opposition, Plaintiff appears to wish to add new claims against new Defendants. Specifically, Plaintiff asks for the opportunity "to identify other responsible PBSP officials currently unknown to him," and appears to wish to sue the UCC officials on the theory that Davis should never have been approved to share a cell with anyone. Opp. at 22-23.

<u>First</u>, it is well-settled that a plaintiff cannot add a new claim in his response to a summary judgment motion, where the basis of the claim was not revealed in the operative complaint. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006) (approving district court's rejection of new claim where "the complaint gave the Appellees no notice of the specific factual allegations presented for the first time in [the] opposition to summary judgment"); *Mercury Serv., Inc. v. Allied Bank of Texas*, 907 F.2d 154 (9th Cir. 1990) ("It is not an abuse of discretion to deny a request to add a new claim where, as here, the request is 'raised at the eleventh hour, after discovery was virtually complete and the [defendant's] motion for summary judgment was pending before the court.'"). Here, the SAC makes no mention of Plaintiff's new theory that Davis should never have been housed with anyone, and betrays no inclination to sue the members of the UCC. *See generally*, SAC. Because the factual basis for this new claim is entirely absent from the SAC, it cannot be added at this late stage of the litigation.

<u>Second</u>, even if Plaintiff properly had moved to amend his complaint – which he did not – leave to amend would be inappropriate here. "Several factors govern the propriety of a motion to amend: (1) undue delay, (2) bad faith, (3) prejudice to the opponent, and (4) futility of amendment." *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1392–93 (9th Cir. 1997) (internal citation and quotation marks omitted). Each factor is fulfilled here. The instant action has been pending for ten years, and adding a new claim now, the basis of which could have been brought at the time the original complaint was filed, smacks of undue delay and bad faith. Defendants would be prejudiced by adding Plaintiff's new claim; they already have won their case, and a new claim would effectively force them to start over, conducting an entirely new round of discovery regarding events that occurred fifteen years ago. Finally, amendment would be futile because adding this new claim would not cancel out the facts of this case: Davis made, at best, a vague

17

statement of not wanting to be celled with Plaintiff, which is insufficient to alert a prison official of a substantial risk of serious harm; before the attack Davis had retracted this statement and agreed to be housed with Plaintiff; and Plaintiff and Davis celled together for months without incident.

Accordingly, Plaintiff will not be allowed to amend.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED.** The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: August 29, 2022

_____
JEFFREY S. WHITE
United States District Judge

18